**The below described is SIGNED.**

**Dated: June 7, 2013**





**JOEL T. MARKER**
**U.S. Bankruptcy Judge**

*Prepared and Submitted By:*
Peggy Hunt (Utah State Bar No. 6060)
Nathan S. Seim (Utah State Bar No. 12654)
**DORSEY & WHITNEY LLP**
136 South Main Street, Suite 1000
Salt Lake City, UT  84101-1685
Telephone: (801) 933-7360
Email: hunt.peggy@dorsey.com
          seim.nathan@dorsey.com

*Attorneys for D. Ray Strong, Chapter 11 Trustee for Castle Arch Real Estate
Investment Company, LLC and Substantively Consolidated Debtors*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>CASTLE ARCH REAL ESTATE INVESTMENT COMPANY, LLC; CAOP MANAGERS, LLC; CASTLE ARCH KINGMAN, LLC; CASTLE ARCH SECURED DEVELOPMENT FUND, LLC; CASTLE ARCH SMYRNA, LLC; CASTLE ARCH STAR VALLEY, LLC; *and*<br><br>CASTLE ARCH OPPORTUNITY PARTNERS I, LLC; CASTLE ARCH OPPORTUNITY PARTNERS II, LLC,<br><br>Debtors. | Case Nos. 11-35082, 11-35237, 11-35243, 11-35242 and 11-35246 (Substantively Consolidated)<br><br>Case Nos. 11-35241 and 11-35240 (Jointly Administered)<br><br>(Chapter 11)<br>The Honorable Joel T. Marker<br><br>☒ Affects All Debtors<br>☐ Affects Only the Substantively Consolidated Debtors<br>☐ Affects only Castle Arch Opportunity Partners I, LLC<br>☐ Affects only Castle Arch Opportunity Partners II, LLC |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ORDER CONFIRMING FIRST AMENDED CHAPTER 11 TRUSTEE'S PLAN OF LIQUIDATION DATED FEBRUARY 25, 2013, AS MODIFIED

The matter before the Court is confirmation of the *First Amended Chapter 11 Trustee's Plan of Liquidation Dated February 25, 2013* [Docket No. 656] (the "Plan") proposed by D. Ray Strong as Chapter 11 Trustee ("Trustee") for Castle Arch Real Estate Investment Company, LLC, CAOP Managers, LLC, Castle Arch Kingman, LLC, Castle Arch Secured Development Fund, LLC, Castle Arch Smyrna, LLC and Castle Arch Star Valley, LLC (the "Consolidated Legacy Debtors"), and in that capacity as manager for Castle Arch Opportunity Partners I, LLC ("CAOP I") and Castle Arch Opportunity Partners II, LLC ("CAOP II") (together, the "CAOP Debtors" and collectively with the Consolidated Legacy Debtors, the "Debtors"). A hearing on the confirmation of the Plan was held on May 30, 2013. Appearances were made on the record.

I.      These *Findings of Fact and Conclusions of Law* ("Findings and Conclusions") are in support of the *Order Confirming Second Amended Chapter 11 Trustee's Plan of Liquidation Dated February 25, 2013, as Modified* (the "Confirmation Order") entered concurrently herewith. All terms and phrases not otherwise defined in these Findings and Conclusions shall have the meanings assigned to them in the Plan.

II.     In entering the Confirmation Order and these Findings and Conclusions, the Court considered the pleadings and documents filed in conjunction with the Trustee's request for confirmation of the Plan, including the following:

1.      The Plan, as modified on the record at the Confirmation Hearing, including as set forth in the redlined document attached as Exhibit A to the *Status Report Regarding Confirmation of the First Amended Chapter 11 Trustee's Plan of Liquidation Dated February 25, 2013 and Notice of Non-Material Modifications to Proposed Plan* [Docket No. 695] (the "Confirmation Status Report"), which amendments are incorporated herein;

2.      The *First Amended Disclosure Statement for First Amended Chapter 11 Trustee's Plan of Liquidation Dated February 25, 2013* (the "<u>Disclosure Statement</u>") previously approved by the Court [Docket No. 655];

3.      This Court's *Order Granting Chapter 11 Trustee's Motion for Entry of an Order (I) Approving Disclosure Statement for Chapter 11 Trustee's Plan of Liquidation, (II) Approving Solicitation Procedures, Including Form of Ballot and Manner of Notice, and (III) Fixing the Confirmation Hearing and the Deadline for Filing Objections to the Confirmation of the Plan* [Docket No. 652] (the "<u>Disclosure Statement Order</u>");

4.      The *Notice of Entry of Order (1) Approving the Trustee's Amended Disclosure Statement and Fixing Time for Filing Acceptances or Rejections of Trustee's [Proposed] Plan of Liquidation Dated February 25, 2013, and (II) Notice of Hearing on Confirmation of the Plan and For Filing Objections* (the "<u>Confirmation Hearing Notice</u>");

5.      The *Memorandum of Law in Support of Confirmation of Chapter 11 Trustee's First Amended Plan of Liquidation Dated February 25, 2013* [Docket No. 663];

6.      The *Certificate of Service for Plan Solicitation Package* [Docket No. 676], which includes proof of service of the Confirmation Hearing Notice on all parties in interest (the "<u>Certificate of Service</u>");

7.      The *Declaration of Ballot Tabulator Regarding Solicitation and Tabulation of Votes in Connection With First Amended Trustee's Plan of Liquidation Dated February 25, 2013* [Docket No. 690] (the "<u>Voting Tabulation Declaration</u>");

8.      The Confirmation Status Report;

9.      The *Declaration of D. Ray Strong in Support of Confirmation of Chapter 11 Trustee's First Amended Plan of Liquidation Dated February 25, 2013* [Docket No. 696]; and

10.     All documents introduced into evidence at the Confirmation Hearing as stated on the record.

III.     In entering these Findings and Conclusions, the Court has also considered the representations made by and evidence in support of confirmation of the Plan presented by the Trustee at the Confirmation Hearing, the lack of objections to confirmation, the entire record of these Bankruptcy Cases, and all testimony and evidence admitted at or before the Confirmation Hearing in these Bankruptcy Cases.  Based on the foregoing, the Court makes the following Findings and Conclusions, as supplemented by the findings of fact and conclusions of law stated by the Court on the record at the Confirmation Hearing (which findings of fact and conclusions of law are incorporated herein) pursuant to Federal Rule of Civil Procedure 52(a), made applicable to this matter by Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").  Under Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, when appropriate.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.      **Jurisdiction and Venue:**  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).  Venue of this matter is proper under 28 U.S.C. §§ 1408 and 1409.

B.      **Notice:**  The Trustee provided notice of the Confirmation Hearing and of the time fixed for balloting and filing objections to confirmation of the Plan to all entities entitled to

receive such notice, including on all known holders of Claims and Interests.  The notice by the

Trustee of such matters, including as set forth in the Confirmation Hearing Notice, fully and

adequately described the relief requested at the Confirmation Hearing and was reasonable,

appropriate, and complied in all regards with due process and applicable provisions of title 11 of

the United States Code, 11 U.S.C. § 101 *et seq.* (the "<u>Bankruptcy Code</u>"), the Bankruptcy Rules

(including Bankruptcy Rules 2002, 2017, 3018 and 3019), and the Local Rules and Orders of the

Court, including the Disclosure Statement Order.

  **C.** **<u>Objections</u>**:  Pursuant to the Disclosure Statement Order, all objections to

confirmation of the Plan were required to be filed on or before May 13, 2013.  As set forth in the

Certificate of Service, notice of this deadline was provided to all parties in interest in these

Bankruptcy Cases pursuant to the Confirmation Hearing Notice.  No objections to confirmation

of the Plan were filed with the Court or otherwise received by the Trustee.

  **D.** **<u>Good Faith Solicitation</u>:**  The Trustee, through his Court-approved balloting

agent, Dorsey & Whitney LLP ("<u>Dorsey</u>"), conducted solicitation of acceptances or rejections of

the Plan, and the related distribution and tabulation of Ballots with respect thereto, in good faith

and in compliance with the Disclosure Statement Order, all applicable provisions of the

Bankruptcy Code (including §§ 1125 and 1126), all applicable provisions of the Bankruptcy

Rules (including Rules 3017 and 3018), and all other applicable laws, rules, regulations, and

Orders of this Court.

  **E.** **<u>Satisfaction of Section 1129(a) of the Bankruptcy Cod</u>e**:  The Plan satisfies all

of the requirements of § 1129(a) of the Bankruptcy Code:

   1. <u>Section 1129(a)(1)</u>:  Bankruptcy Code § 1129(a)(1) requires that a plan

"compl[y] with the applicable provisions of [the Bankruptcy Code]."  Although broadly

drafted, courts have held that §1129(a)(1) requires that a plan comply with §§ 1122 and 1123, which provisions govern classification and contents of a plan.[1] Here, the Plan complies with all applicable provisions of the Bankruptcy Code, including §§ 1122 and 1123.

(a)    Section 1122:  Bankruptcy Code § 1122(a) provides that a plan may place a claim or interest in a particular class if such claim or interest is "substantially similar" to the other claims or interests of such class.  The term "substantially similar" has generally been interpreted to mean similar in legal character to other claims against a debtor's assets or to other interests in the debtor.[2]

The classification structure of the Plan is proper and in accordance with § 1122 of the Bankruptcy Code.  Each of the Classes provided for in the Plan is comprised of Classes of Claims or Interests of a similar legal character or nature.  All Claims and Interests within each Class are substantially similar to the other Claims or Interests in that Class because they are similar in legal character to the other Claims or Interests in such Class.

(b)    Section 1123:  Bankruptcy Code § 1123 sets forth certain mandatory and permissive requirements with which every Chapter 11 plan must comply.  For at least the following reasons, the Plan fully complies with each of

---

[1]  *See, e.g., Paige*, 2007 WL 4143212 at *8 n.13 (citing H.R. Rep. No. 595, 95th Cong., 1st Sess., 412 (1977); S. Rep. 989, 95th Cong., 2d Sess., 126 (1978)); *see also Kane v. Johns-Manville Corp.,* 843 F.2d 636, 648-49 (2nd Cir. 1988); *In re Aspen Limousine Serv., Inc.,* 193 B.R. 325, 340 (D. Colo. 1996); *In re Genesis Health Ventures, Inc.,* 266 B.R. 591, 599 (Bankr. D. Del. 2001).

[2]  *See* 7 Collier on Bankruptcy ¶ 1122.03 (2013).

the mandatory requirements stated in § 1123(a) and is consistent with the

permissive requirements in § 1123(b):

- <u>Section 1123(a)(1)</u>.  Section 1123(a)(1) requires that a plan
designate classes of claims, other than those claims of a kind specified in §
507(a)(2), 507(a)(3), 507(a)(8), and classes of interests.  The Plan properly
designates Classes of Claims and Interests as required under § 1123(a)(1) of the
Bankruptcy Code and provides for the treatment of Claims that should not be
classified.  Article II, Section 2.2 of the Plan properly classifies Claims and
Interests, Article IV provides for the treatment of Unclassified Claims, and Article
V provides for the treatment of classified Claims and Interests.

- <u>Section 1123(a)(2)</u>.  The Plan complies with § 1123(a)(2)
of the Bankruptcy Code because it specifies unimpaired Classes of Claims.  A
summary of unimpaired Classes is set for in Sections 2.3 and 3.2 of the Plan.
Unimpaired Classes of Claims consist of Classes A1, B1 and C1 (Secured Tax
Claims), Classes A2, B2 and C2 (Secured Claims) and Classes A3, B3 and C3
(Priority Unsecured Claims).  Section 3.2 of the Plan also states that such Classes
are not impaired and that the holders of Claims in those Classes are deemed to
vote in favor of the Plan.  The Plan contains no unimpaired Classes of Interests.

- <u>Section 1123(a)(3)</u>.  The Plan satisfies § 1123(a)(3) of the
Bankruptcy Code because it specifies the treatment of impaired Classes of Claims
and Interests.  A summary of impaired Classes is set for in Sections 2.3 and 3.1 of
the Plan.  Impaired Classes consist of Classes A4, B4 and C4 (General Unsecured
Claims), Classes A5, B5 and C5 (Preferred Interests), and Classes A6, B6 and C6

(Common Interests).  Article V of the Plan also expressly states how each of these

Classes of Claims and Interests as against each Debtor will be treated.

- Section 1123(a)(4).  Section 1123(a)(4) of the Bankruptcy

Code has been met because the Plan provides the same treatment for each Claim

or Interest of a particular Class, unless the holder of a particular Claim or Interest

has agreed to less favorable treatment.  Article V of the Plan sets forth the

treatment of Claims or Interests classified in each Class under the Plan and

provides for the same treatment of each Claim and Interest within a particular

Class.

- Section 1123(a)(5).  The Plan satisfies § 1123(a)(5) of the

Bankruptcy Code because the Plan, together with the Liquidating Trust

Agreements, provides adequate means for its implementation in a manner

authorized under § 1129(a).  Specifically, Article VI and various other provisions

of the Plan and the Liquidating Trust Agreements approved as part of

confirmation of the Plan and incorporated therein provide details regarding the

implementation of the Plan.

- Section 1123(a)(7).  To the extent that the Plan provides for

a manner of selection of the Trustee as estate representative of the Debtors, the

Trustee as Liquidating Trustee of any one of the Liquidating Trusts, or of Weston

L. Harris as the Conflicts Referee appointed as part of the Plan and the

Liquidating Trust Agreements, § 1123(a)(7) has been met as the Plan contains

only provisions that are consistent with the interests of holders of Claims and

Interests and with public policy.  Through the confirmation process, full

disclosure has been made (i) that the Trustee will serve as estate representative of each of the respective Estates after confirmation of the Plan, (ii) that the Trustee will serve as Liquidating Trustee of each of the Liquidating Trusts, (iii) that Weston L. Harris is designated as Conflicts Referee and will be appointed as part of the confirmation process, (iv) of the selection and identity of Weston L. Harris as the Conflicts Referee, and (v) of the Intercompany Claims to be determined by the Conflicts Referee.

- Sections 1123(a)(6) and (a)(8). Sections 1126(a)(6) and (a)(8) are not applicable because the Plan provides for a liquidation of the Debtors' respective Estates; the respective Estates will not issue securities of any kind; and the Debtors are not individuals.

2.      Section 1129(a)(2): Bankruptcy Code § 1129(a)(2) requires that the Trustee "compl[y] with the applicable provisions of [the Bankruptcy Code]." The inquiry under this section is whether the Trustee has complied with the disclosure and solicitation requirements under § 1125 of the Bankruptcy Code.[3] Here, the Trustee has complied with the applicable provisions of the Bankruptcy Code, including the provisions of §§ 1125 and 1126 regarding disclosure, plan solicitation and the treatment of acceptances and rejections of the Plan.

Pursuant to the Disclosure Statement Order, the Court approved the Disclosure Statement as containing "adequate information" within the meaning of Bankruptcy Code § 1125 and authorized its use in connection with the solicitation of votes to accept or

---

[3]   *See* H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978) ("Paragraph (2) [of section 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure.").

reject the Plan.  Also pursuant to the Disclosure Statement Order, the Court approved the

Trustee's Solicitation Procedures with respect to the Plan, including the form and content

of the Solicitation Package served on holders of Voting Claims and Interests.    The

Trustee, through Dorsey, the Court-approved balloting agent, has complied with the

Solicitation Procedures approved by the Court in the Disclosure Statement Order and

solicited acceptances and rejections of the Plan in good faith and in accordance with

applicable law.    Accordingly, the Trustee's solicitation of votes related to the Plan

complies with with § 1125(b).

In addition to soliciting acceptance of the Plan in good faith and in accordance

with §1125(b), the Plan has been solicited and votes have been tabulated in accordance

with Bankruptcy Code § 1126, which specifies the requirements for acceptance of the

Plan.  Under § 1126(a), only holders of impaired Allowed Voting Claims and Interests

that will receive or retain property under the Plan may vote to accept or reject the Plan.

Thus, as set forth in the Summary of Classes in Sections 2.3 and 3.1 of the Plan, the

Trustee only solicited acceptances of the Plan from holders of Voting Claims and

Interests, which are holders of impaired Claims and Interests in Classes A4–A5, B4–B5

and C4–C5 (collectively, the "Voting Classes").

On the other hand, the Trustee is not required to solicit votes from unimpaired

Classes that are deemed to accept the Plan under § 1126(f) and Classes that will receive

or retain no property under the Plan that are deemed to reject the Plan under § 1129(g).

Thus, as set forth in the Summary of Classes in Sections 2.3 and 3.2 of the Plan, holders

of Claims in Classes A1–A3, B1–B3 and C1–C3 are unimpaired and are conclusively

presumed to accept the Plan, and holders of Common Interests in Classes A6, B6 and C6

will receive or retain no consideration under the Plan and are conclusively presumed to reject the Plan.  As a result, the Trustee has not solicited votes on the Plan from holders of Claims and Interests in these Classes.

For all these reasons, the Trustee has complied with the applicable disclosure and solicitation provisions of §§ 1125 and 1126.  Thus, §1129(a)(2) has been satisfied.

3.        Section 1129(a)(3):  Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in good faith and not by any means forbidden by law." Generally speaking, good faith will be found where there is a "reasonable likelihood that the plan will achieve its intended results which are consistent with the purposes of the Bankruptcy Code, that is, is the plan feasible, practical, and would it enable the company to continue its business and pay its debts in accordance with the plan provisions."[4]

The Trustee's Plan is proposed in good faith and is not by any means forbidden by law.  The Court appointed the Trustee as the Chapter 11 trustee of Castle Arch Real Estate Investment Company, LLC, and in that capacity the Trustee managed the other Consolidated Legacy Debtors until and after substantive consolidation, as well as the CAOP Debtors.  The Trustee has determined that the Debtors cannot be reorganized due to a number of factors,[5] and therefore, liquidation of the Debtors' respective Estates is required.  In an exercise of his business judgment, the Trustee has determined that the Plan, including its implantation through, in part, the formation of the Liquidating Trusts and the treatment of Intercompany Claims by the Conflicts Referee through the Conflicts Resolution Procedures, affords the most fair, efficient and equitable means of distributing

---

[4]  *Paige*, 685 F.3d at 1178-79 (quoting *In re Pikes Peak Water Co.*, 779 F.2d 1456, 1459 (10th Cir. 1985) (internal quotations omitted)).

[5]  *See* Disclosure Statement, Part V.B.

the property of the Debtors for the benefit of holders of Allowed Claims against and

Allowed Interests in the Consolidated Legacy Debtors and each of the CAOP Debtors.

Furthermore, based on the record, including the Trustee's testimony, the Court finds that

the Plan is feasible.[6]  Accordingly, the Plan has been filed in good faith and the

requirements of §1129(a)(3) are satisfied.

      4.     <u>Section 1129(a)(4)</u>:  Section 1129(a)(4) of the Bankruptcy Code requires

that certain professional fees and expenses be subject to approval by the Court as

reasonable.  This section has been construed to require that all payments of professional

fees that are made from an estate be subject to review and approval as to their

reasonableness by the Court.[7]

      Pursuant to Section 4.2 of the Plan, all fees and expenses, as well as all other

accrued fees and expenses of the Trustee and professionals retained in these Bankruptcy

Cases through the Effective Date, remain subject to final review for reasonableness by

the Court under § 330 of the Bankruptcy Code.  The Court's review and ultimate

determination of the fees and expenses satisfy the objectives of § 1129(a)(4).

Additionally, Article X of the Plan provides for the Court's retention of jurisdiction to

hear and determine Administrative Expense Claims.  Based upon the foregoing, the Plan

complies with the requirements of § 1129(a)(4).

      5.     <u>Section 1129(a)(5)</u>:  Section 1125(a)(5) pertains to post-confirmation

management.  Subsection 1129(a)(5)(A)(i) requires that the plan proponent disclose "the

identity and affiliations of any individual proposed to serve, after confirmation of the

---

[6]  *See* Disclosure Statement, Exhs. H-J.

[7]  *See, e.g., Mabey v. Southwestern Elec. Power Co. (In re Cajun Elec. Power Coop.),* 150 F.3d 503, 514 (5th Cir. 1998)*; In re Valley View Shopping Ctr., L.P.,* 260 B.R. 10, 22-23 (Bankr. D. Kan. 2001).

plan, as a director [or] officer" of the debtor, "an affiliate of the debtor participating in a

joint plan with the debtor," or a "successor to the debtor under the plan."  In addition, §

1129(a)(5)(A)(ii) requires that the individual's appointment to or continuation in office

"is consistent with the interests of creditors and equity security holders and with public

policy[.]"[8]  To the extent applicable in this case, § 1129(a)(5) has been met.

The Disclosure Statement, Article VI of the Plan and the Liquidating Trust

Agreements, as incorporated in the Plan, fully disclose that (a) the Trustee will retain

property of the respective Estates and will administer the respective Estates as estate

representative after confirmation of the Plan in accordance with the Bankruptcy Code and

the Plan, (b) that D. Ray Strong will serve as the Liquidating Trustee of each of the

Liquidating Trusts, and (c) that Weston L. Harris will be appointed as the Conflicts

Referee on the Effective Date through the Liquidating Trust Agreements to resolve

Intercompany Claims pursuant to the Conflicts Resolution Procedures.  The Court finds

that the selection of D. Ray Strong to serve as estate representative of each of the post-

confirmation Estates and as Liquidating Trustee for each of the Liquidating Trusts was

done in good faith, appropriately taking into account the facts and circumstances of these

Bankruptcy Cases.  The Liquidating Trust Agreements providing for the appointment of

the Liquidating Trustee, including terms related to the Liquidating Trustee's management

of each of the Liquidating Trusts and limitations on his authority related to Intercompany

Claims, were negotiated in good faith and at arms' length.  The Court finds that the

selection of Weston L. Harris as Conflicts Referee was done in good faith as a result of

fair and arms' length negotiations.

---

[8] Section 1129(a)(5)(B) of the Bankruptcy Code, which requires that the plan proponent disclose the "identity of
any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such
insider[,]" does not apply in these Bankruptcy Cases.

Post-confirmation continuation of the Trustee's service for each of the Estates and the Liquidating Trusts is by far the most efficient means for administering, liquidating and distributing the assets of the Debtors and the Liquidating Trusts for the benefit of the holders of Claims and Interests and will reduce expenses. Appointment of the Conflicts Referee and application of the Conflict Resolution Procedures set forth in the Liquidating Trust Agreements, including the duties of the Trustee and counsel as set forth in the Liquidating Trust Agreement, is a fair and efficient method of resolving Intercompany Claims. Accordingly, continuation of the Trustee's service after the confirmation of the Plan and the appointment of D. Ray Strong as Liquidating Trustee and of Weston L. Harris as Conflicts Referee is consistent with the interests of holders of Claims and Interests and with public policy.

6.    Section 1129(a)(6): Section 1129(a)(6) of the Bankruptcy Code requires that any regulatory commission having jurisdiction over the rates charged by a reorganized debtor in the operation of its businesses approve any rate change provided for in the plan. This provision is inapplicable in the instant Bankruptcy Cases.

7.    Section 1129(a)(7): Section 1129(a)(7) of the Bankruptcy Code mandates that a plan be in the best interests of creditors and equity interest holders, requiring that each holder of a claim or equity interest either accept the plan or receive or retain under the plan property having a present value, as of the effective date of the plan, not less than the amount such holder would receive or retain if the debtor were liquidated under Chapter 7 of the Bankruptcy Code. Thus, under this "best interests" test, the Court must find that if an impaired holder of an Allowed Claim or Interest has not accepted the Plan, such party will receive or retain value that is not less than the amount it would receive if

the Debtors were liquidated.  Here, the best interest test is met because each holder of an impaired Claim or Interest has accepted the Plan, or each holder will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than such holder would so receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code.

As set forth in the Voting Tabulation Declaration and based on the evidence set forth in the record, the Plan has been accepted by impaired Voting Classes A4–A6, B4–B6 and C4–C6.  Although holders of Allowed Common Interests in Classes A6, B6 and C6 are deemed to reject the Plan under § 1126(g), these holders would not receive a distribution in a Chapter 7 case and, therefore, each of these holders will achieve a recovery that is "not less than the amount" they would receive in a Chapter 7 liquidation. Accordingly, the Plan satisfies § 1129(a)(7).

8.      Section 1129(a)(8):  Section 1129(a)(8) of the Bankruptcy Code requires the Court to confirm the Plan if each Class of impaired Claims or Interests accepts the Plan, as follows: "With respect to each class of claims or interests—(A) such class has accepted the plan; or (B) such class is not impaired under the plan."  If this section is not met, the Court may nevertheless confirm a Plan under § 1129(b) of the Bankruptcy Code.

(a)      Section 1129(a)(8) has been met as holders of unimpaired Claims in Classes A1-A3, B1-B3 and C1-C3, which are presumed to accept the Plan under § 1126(f) of the Bankruptcy Code, as well as to all of the impaired Voting Classes each of which has voted to accept the Plan.

(b)      Section 1129(a)(8) presumptively cannot be met as to Classes A6, B6 and C6 because the holders of Interests in these Classes will receive or retain

no property under the Plan and, therefore, are deemed to have rejected the Plan pursuant to § 1126(g) of the Bankruptcy Code.  As set forth more fully below, however, the Plan may nonetheless be confirmed because the Trustee has met the requirements of § 1129(b) of the Bankruptcy Code with respect to these Classes.

9.     Section 1129(a)(9):  Section 1129(a)(9) of the Bankruptcy Code requires that persons holding Allowed Claims entitled to priority under § 507(a) of the Bankruptcy Code receive specified cash payments under the Plan.  Unless the holder of a particular Claim agrees to a different treatment with respect to such Claim, § 1129(a)(9) sets forth the treatment the Plan must provide.  The Plan comports with the applicable requirements of § 1129(a)(9).

(a)     In satisfaction of the requirements of § 1129(a)(9)(A), and pursuant to Section 4.2 of the Plan, the Plan provides that all Allowed Administrative Expense Claims under §§ 503(b) and 507(a)(2) will be paid in full in Cash on the later of: (i) the Effective Date, or (ii) within fifteen (15) Business Days of the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim.

(b)     In satisfaction of the requirements of § 1129(a)(9)(B), and pursuant to Sections 5.1.3, 5.2.3 and 5.3.3 of the Plan, the Plan provides that all Allowed Priority Unsecured Claims under § 507(a) of the Bankruptcy Code, if any, will be paid in full in Cash on the later of: (i) the Effective Date, or (ii) within fifteen (15) Business Days of the date such Priority Unsecured Claim becomes an Allowed Priority Unsecured Claim.

(c)      The Plan satisfies the requirements of § 1129(a)(9)(C) with respect

to the treatment of Priority Tax Claims under § 507(a)(8) of the Bankruptcy Code.

Pursuant to Section 4.3 of the Plan, each Holder of an Allowed Priority Tax Claim

shall be paid either (i) upon such terms as may be agreed to between the Trustee

and such holder of an Allowed Priority Tax Claim, (ii) in full in Cash on the later

of the Effective Date or within fifteen (15) Business Days of the date that such

Allowed Priority Tax Claim becomes an Allowed Priority Tax Claim, or (iii) in

deferred Cash payments to be agreed upon by the Trustee and the holder of the

Allowed Priority Tax Claim, not to exceed a period of five (5) years after the

Petition Date.

10.      11 U.S.C. § 1129(a)(10): Section 1129(a)(10) of the Bankruptcy Code

requires the affirmative acceptance of the Plan by at least one Class of impaired Claims,

"determined without including any acceptance of the plan by any insider."  This element

has been met in this case inasmuch as all Voting Classes, each of which is impaired, have

voted to accept the Plan.

11.      11 U.S.C. § 1129(a)(11): Section 1129(a)(11) of the Bankruptcy Code

requires that the Court determine that the Plan is feasible as a condition precedent to

confirmation.[9]  This requires the Court to determine whether the Plan is "workable" and

has a "reasonable likelihood of success."[10]  "The test is whether the things which are to be

done after confirmation can be done as a practical matter under the facts of the case."[11]

---

[9]   *See Paige*, 685 F.3d at 1187 (10th Cir. 2012) ("A Chapter 11 plan cannot be confirmed unless it is feasible.").

[10]   *United States v. Energy Res. Co.*, 495 U.S. 545, 549 (1990); *accord Paige,* 685 F.3d at 1187; *Pikes Peak*, 779 F.2d at 1460 (quoting *In re Monnier Bros.*, 755 F.2d 1336, 1341 (8th Cir. 1985)).

[11]   *Paige*, 685 F.3d at 1187.

Based on the evidence and the entire record, including Exhibits H-J of the Disclosure Statement, the Court finds that the Plan is workable and has a reasonable likelihood of success inasmuch as there is sufficient Cash to fund payments, if any, required on the Effective Date and the means for implementation of the Plan set forth in Article VI of the Plan, including the formation of the Liquidating Trusts, can be done. Accordingly, the Plan is feasible and § 1129(a)(11) has been met.

12.     11 U.S.C. § 1129(a)(12): Section 1129(a)(12) of the Bankruptcy Code requires the payment of "[a]ll fees payable under section 1930 [title 28, the United States Code], as determined by the court at the hearing on confirmation of the plan." Section 507(a)(1) of the Bankruptcy Code provides that "any fees and charges assessed against the estate under [§ 1930,] chapter 123 of title 28" are afforded priority as administrative expenses. In accordance with §§ 507 and 1129(a)(12), Section 4.2 of the Plan and each of the Liquidating Trust Agreements provide that all fees due and payable to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) shall be paid in full.

13.     11 U.S.C. § 1129(a)(13): Section 1129(a)(13)of the Bankruptcy Code, requiring compliance with 11 U.S.C. § 1114, is not applicable in these Bankruptcy cases.

14.     11 U.S.C. § 1129(a)(14): Section 1129(a)(14) of the Bankruptcy Code requires that domestic support obligations be paid. This provision is not applicable in these Bankruptcy Cases.

15.     11 U.S.C. § 1129(a)(15): Section 1129(a)(15) of the Bankruptcy Code expressly states that it applies to "case[s] in which the debtor is an individual." Therefore, the provision does not apply to these Bankruptcy Cases.

16.     <u>11 U.S.C. § 1129(a)(16):</u>  Section 1129(a)(16) of the Bankruptcy Code states that "[a]ll transfers of property of the plan shall be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust." This provision does not apply in these Bankruptcy Cases because the Debtors were a moneyed business or commercial entity.

**F.      Satisfaction of Section 1129(b) of the Bankruptcy Code**:  The Plan satisfies § 1129(b) as follows:

1.      All of the applicable requirements of 11 U.S.C. § 1129, other than § 1129(a) (8), are met with respect to the Plan.

2.      As discussed above, while unimpaired Classes A1-A3, B1-B-3 and C1-C-3 are deemed to accept the Plan under § 1126(f) and each of the impaired Voting Classes have voted to accept the Plan, § 1129(a)(8) is not met as to impaired Classes A6, B6 and C6, each of which is deemed to reject the Plan under § 1126(g).

3.      Nevertheless, the Plan may be confirmed because it does not "discriminate unfairly" and is "fair and equitable" as to Classes A6, B6 and C6.

(a)      A plan unfairly discriminates in violation of § 1129(b) only if similar claims are treated differently without a reasonable basis for the disparate treatment.[12]  The Plan in this case does not "discriminate unfairly" with respect to Classes A6, B6 and C6 because there is no disparate treatment of similar Interests. These Classes, which are treated in Sections 5.1.6, 5.2.6 and 5.3.6 of the Plan, are the only Classes of Interests based on common stock holdings in each of the

---

[12]  *See, e.g.*, *Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 228 (Bankr. D.N.J. 2000); *In re Crosscreak Apts., Ltd.*, 213 B.R. 521, 537 (Bankr. E.D. Tenn. 1997).

Debtors.  Inasmuch as Classes A6, B6 and C6 represent the only common stock

Interests classified under the Plan, the Plan cannot be deemed to unfairly

discriminate among any holders of such Interests.

(b)      Section 1129(b) sets forth the definition of the phrase "fair and

equitable."  In addition to the requirements enumerated in § 1129, courts have

interpreted the "fair and equitable" standard to include the requirements that no

class junior to the dissenting class can receive or retain any value under the Plan

and no class senior to the dissenting class can receive more than full

compensation for its allowed claims.[13]  Here, the Plan is fair and equitable within

the meaning of § 1129(b).  No Classes junior to Classes A6, B6 or C6 exist or will

receive or retain any value under the Plan.  Further, no Classes senior to Classes

A6, B6 or C6 will receive more than full compensation for their Claims or

Interests.

G.      **Satisfaction of Section 1125(e) of the Bankruptcy Code:**  The Trustee and the

Trustee's attorneys, agents and representatives, including Dorsey as balloting agent, have acted

in good faith with respect to the solicitation of votes on the Plan and are entitled to all the

protections of § 1125(e) of the Bankruptcy Code.

H.      **Approval of Plan Modifications**:  All modifications to the Plan filed or

announced prior to the conclusion of the Confirmation Hearing constitute technical changes

and/or changes that have either been consented to by affected constituents or which do not

adversely affect or change the treatment of any other Claims or Interests.  Accordingly, pursuant

to Bankruptcy Rule 3019, these modifications do not require (1) additional disclosure under §§

---

[13]  *See Paige*, 685 F.3d at 1183-84; *Unruh v. Rushville State Bank*, 987 F.2d 1506, 1508 (10th Cir. 1993).

1125 or 1127(a) of the Bankruptcy Code, (2) re-solicitation of votes under § 1126 of the

Bankruptcy Code, or (3) that holders of Claims or Interests be afforded an opportunity to change

previously cast acceptances or rejections of the Plan.  The Plan as so modified meets the

requirements of §§ 1122 and 1123 of the Bankruptcy Code for all of the reasons set forth above.

Such modifications shall be deemed accepted by each holder of a Voting Claim or Interest.

      **I.**      **<u>Approval of Liquidating Trust Agreements</u>**:  Article VI, Sections 6.1 and 6.7 of

the Plan, as permitted under § 1123 of the Bankruptcy Code, requires the creation of the Legacy

Trust, the CAOP I Trust and the CAOP II Trust pursuant to the applicable Liquidating Trust

Agreements, and incorporates the Liquidating Trust Agreements as part of the Plan.  The

Liquidating Trust Agreements, and the terms of each, is necessary for the implementation of the

Plan.

      The Court has reviewed the proposed Liquidating Trust Agreements in conjunction with

the confirmation of the Plan and approves each of the Liquidating Trust Agreements, including

but not limited to the following:

      1.      The appointment of D. Ray Strong as the Legacy Trustee, the CAOP I

Trustee and the CAOP II Trustee, as applicable;

      2.      The appointment of Weston L. Harris as the Conflicts Referee under each

of the Liquidating Trust Agreements;

      3.      The validity and application of the Conflict Resolution Procedures set

forth in Section 4 of each of the applicable Liquidating Trust Agreements, including the

duties of the Legacy Trustee, CAOP I Trustee and CAOP II Trustee as provided for in

Section 4.2 of each of the Liquidating Trust Agreements, and the duties and employment

of counsel set forth in Section 4.3 of each of the Liquidating Trust Agreements; and

4.      The payment of the Conflicts Referee's fees and costs as a cost of each of the Liquidating Trusts pursuant to the applicable terms of the applicable Liquidating Trust Agreements.

**J.      Approval of Unconditional Assignment of Individual Claims:**  The agreement of each of the holders of Individual Claims to unconditionally assign their respective Individual Claims upon confirmation of the Plan as provided for in Section 6.4 of the Plan is approved.  The unconditional assignment was proposed by the Trustee in good faith, gave holders of such Individual Claims adequate notice of the agreement and its terms, and provided each holder the opportunity to opt-out of assigning an Individual Claim.  With the exception of Merchants Trust Company, which is the only entity that opted out of this unconditional assignment, all holders of Individual Claims, regardless of whether they voted or whether they voted to accept or reject the Plan, have unconditionally assigned their Individual Claims upon confirmation of the Plan.  No holder of an Individual Claim may therefore assert such Individual Claim upon entry of this Confirmation Order or otherwise and, without limiting its application in any way, the injunctions set forth in Sections 6.10 and 11.1 of the Plan apply.

**K.      Good Faith Agreements**:  The agreements, transactions and transfers contemplated under the Plan are fair, equitable and reasonable, were negotiated at arms' length and are entered into in good faith, were fully disclosed, are in the best interests of each of the Estates, and assist in providing adequate means for implementing the Plan as to each of the Debtors.

**L.      Preservation of Causes of Action and Defenses—Retained Claims and Actions:**  All rights, Claims, Causes of Action, defenses and counterclaims, without limitation, are preserved as set forth in the Section 6.9 of the Plan.

**M.**   **Continued Trustee Administration**:  Administration of each of the Estates by

the Trustee as estate representative as stated in the Plan, including in Sections 6.6 of the Plan, is

appropriate and consistent with the best interests of holders of Claims and Interests, the Estates

and the interests of public policy, and the Trustee is authorized to take actions as set forth in the

Plan and the Confirmation Order, or any actions reasonably necessary to implement the Plan.

Nothing herein shall limit the right of the Trustee to pay expenses of the Estates incurred in the

ordinary course of business either before or after the Effective Date.  After the Effective Date,

the Trustee shall no longer be required to submit monthly operating reports to the United States

Trustee, but he will submit Distribution Reports on a quarterly basis with the United States

Trustee and will timely file, serve and publish any such other reports as contemplated by the

Liquidating Trust Agreements, until the entry of a Final Decree.

**N.**   **Satisfaction of Conditions Precedent:**  All of the conditions precedent to

confirmation of the Plan, if any, have been satisfied or waived.

**O.**   **No Improper Tax Purpose**:  The principal purpose of the Plan is not the

avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933

(15 U.S.C. § 77e).

**P.**   **Injunctions and Limitations of Liability**:  The injunctions set forth in Sections

6.10 and 11.1 of the Plan and in the Liquidating Trust Agreements and limitations on liability,

including those in Section 11.3 of the Plan and the Liquidating Trust Agreements, are fair and

equitable, are given for valuable consideration, were properly noticed to holders of Claims and

Interests and other interested parties in accordance with the requirements of due process and the

applicable provisions of the Bankruptcy Code and Bankruptcy Rules, and are in the best interest

of the respective Estates.  Thus, the injunctions and limitations on liability, including those

provisions set forth in Section 6.10 and Sections 11.1 and 11.3 of the Plan and as provided for in

the Liquidating Trust Agreements, are effective and binding upon all applicable Persons to the

fullest extent provided in the Plan and the Confirmation Order.

    **Q.**    **Effectuation Actions:**  The Trustee may execute such documents or take such

other action as is necessary to effectuate the Plan or any one of the Liquidating Trust

Agreements, or to wind-down or dissolve any of the Debtors or any affiliates of the Debtors.

    **R.**    **Retention of Jurisdiction**:  The Court's retention of jurisdiction as set forth in

Article X of the Plan is appropriate and comports with the parameters contained in 28 U.S.C.

§ 157.  Accordingly, the Court retains jurisdiction as provided for in Article X of the Plan.

    **S.**    **Binding Effect**:  The provisions of the Plan, including provisions related to the

effect of confirmation set forth in Section 11.10 of the Plan and the Liquidating Trust

Agreements incorporated therein, these Findings and Conclusions, and the Confirmation Order

shall bind without limitation the Debtors, each of the Estates, the Trustee, all holders of Claims

against and Interests in the Debtors, the Liquidating Trustee, the Liquidating Trusts, the Conflicts

Referee the Liquidating Trust Beneficiaries, and all parties in interest.  The binding effect of Plan

applies whether or not the holder of a Claim or Interest has a Claim or Interest that is Allowed

under the Plan or impaired under the Plan, whether or not a Person has voted to accept or reject

the Plan, and whether or not a Person has filed or is deemed to have filed proofs of Claim or

Interest in these Bankruptcy Cases.

    Without limiting the foregoing in any way, with the exception of Merchants Trust

Company, which is the only entity that opted out of the assignment of its Individual Claims, the

binding effect of the Plan applies to the unconditional assignment of Individual Claims pursuant

to Section 6.4 of the Plan.  All holders of Individual Claims, regardless of whether they voted or

whether they voted to accept or reject the Plan, have unconditionally assigned their Individual

Claims upon confirmation of the Plan.

**T.**     **Effect of Appeal**:  Unless otherwise provided by law, the reversal or modification

of the Conformation Order and these Findings and Conclusions on appeal shall not affect the

validity of the Plan or any agreement or action authorized by the Confirmation Order or under

the Plan with respect to any entity acting in good faith, whether or not that entity knows of the

appeal, unless the Confirmation Order is stayed pending appeal.

**U.**     **Construction and Enforceability:**  Each term and provision of the Plan is hereby

deemed to be valid and enforceable pursuant to its terms.  If and to the extent that there is any

direct conflict between the terms of the Plan, the Findings and Conclusions and the terms of the

Confirmation Order, the Confirmation Order shall control.  Any headings in these Findings and

Conclusions or in the Confirmation Order are for convenience and reference only and serve no

other purpose.

**V.**     **Dissolution of the Committee**:  Dissolution of the Committee pursuant to the

terms of Section 11.11 of the Plan is reasonable and appropriate under the circumstances of these

Bankruptcy Cases.

**W.**     **Notices of Confirmation and Effective Date**.  Pursuant to Bankruptcy Rule

3020(c)(2), the Trustee will serve notice of the entry of the Confirmation Order to all known

holders of Claims and Interests and parties in interest in the Bankruptcy Cases no later than

fifteen (15) days of the entry of the Confirmation Order and the Findings and Conclusions.

In addition, the Trustee will give written notice of the occurrence of the Effective Date

pursuant to Art. XI, Section 11.2 of the Plan.

## **CONCLUSION**

Based on the foregoing Findings and Conclusions, the Trustee is entitled to entry by this

Court of the Confirmation Order.

_____End of Order_____